DANIEL SIDELINGER *&amp; al. versus* JOHN HAGAR *&amp; al.*

In an action by A., owner of a saw-mill, to recover damages of B., alleged owner or occupant of another mill situated on the opposite side of the same river and supplied with water from the same source, for diverting water from the mill of A., the ownership or actual occupancy of B., must be *proved* by competent evidence in the case, or the suit cannot be maintained.

Such ownership is not established by a deed to the defendants from a party not shown by the evidence to have had the title in him, while it does appear from the evidence, that a third party has in himself an older and apparently perfect outstanding title; and the presumption in the absence of proof in such case, is, that the possession follows the superior title.

The Court cannot presume that he, who assumes to convey as owner, is such in fact, or undertake to supply a link in the chain of title, whose existence is rendered probable, but which is not in the case.

ON REPORT from *Nisi Prius*, TENNEY, C. J., presiding.

This was an action of the case, in which the plaintiffs, Daniel Sidelinger, William Mathews and Benjamin Mathews, as owners of a saw-mill on the south side of Medomac river, claimed to recover damages of the defendants, John Hagar, Andrew S. Sidelinger and Henry Law, alleged owners of a stave-mill on the north side of the same river, for the diversion of water from the plaintiffs' mill by the defendants, in the use of their mill.

The facts, contained chiefly in deeds produced by the one party and the other, sufficiently appear in the opinion of the Court.

*J. Ruggles*, for defendants.

*J. Bulfinch*, for plaintiffs.

RICE, J. — This case comes before us on a report. The plaintiffs claim to recover damages, as owners of a saw-mill situated on the south side of Medomac river, in the town of Union, for the diversion of water by the defendants, the alleged owners of a stave-mill, situated on the opposite side of the same river, and drawing water from the same dam.

The title, as appears, on both sides of the river, to the land occupied by both mills, was originally in Benjamin Bussey, who conveyed the same to John Bulfinch, by deeds dated

Feb. 14, 1820, and July 9, 1821. Bulfinch immediately afterwards, and while sole owner on both sides of the river, built the saw-mill, now claimed by the plaintiffs, on the south side. The plaintiffs claim title under Bulfinch. The following table will exhibit the title to the saw-mill and land connected therewith, as deduced from the deeds put into the case by the plaintiffs, at the time this action was commenced, and at the date of several deeds referred to.

| Date of Deeds. | John Bulfinch. | Samuel Hagar. | Suel Hagar. | Samuel Hagar, jr. | Daniel Sidelinger. | John Hagar. | Benj. Mathews. | Elijah Sidelinger. | William Mathews. |
|---|---|---|---|---|---|---|---|---|---|
| August 23, 1823, | $\frac{2}{3}$ | $\frac{1}{6}$ | $\frac{1}{6}$ | | | | | | |
| February 24, 1830, | $\frac{1}{3}$ | $\frac{1}{6}$ | | $\frac{1}{6}$ | | | | | |
| February 20, 1833, | $\frac{1}{6}$ | $\frac{1}{6}$ | | $\frac{1}{6}$ | $\frac{1}{3}$ | | | | |
| January 19, 1837, | $\frac{1}{6}$ | | | $\frac{1}{3}$ | $\frac{1}{3}$ | | | | |
| June 27, 1842, | $\frac{1}{6}$ | | | $\frac{1}{3}$ | $\frac{1}{3}$ | $\frac{1}{6}$ | | | |
| November 7, 1849, | $\frac{1}{6}$ | | | $\frac{1}{3}$ | $\frac{1}{3}$ | | $\frac{1}{6}$ | | |
| April 8, 1850, | $\frac{1}{6}$ | | | $\frac{1}{3}$ | $\frac{1}{3}$ | | $\frac{1}{6}$ | $\frac{1}{6}$ | |
| April 13, 1850, | $\frac{1}{6}$ | | | $\frac{1}{3}$ | $\frac{1}{3}$ | | $\frac{1}{6}$ | | $\frac{1}{6}$ |
| May 16, 1850, | $\frac{1}{6}$ | | | $\frac{1}{3}$ | $\frac{1}{3}$ | | $\frac{1}{3}$ | | $\frac{1}{6}$ |
| July 13, 1850, | $\frac{1}{6}$ | | | $\frac{1}{3}$ | $\frac{1}{3}$ | | $\frac{1}{3}$ | | $\frac{1}{3}$ |

From this exhibit it is manifest that the true condition of the title does not appear. There is nothing in the evidence by which the defects in the title by deed can be explained.

In the deed of February 20, 1833, Samuel Davis, without any apparent title, joins with Bulfinch in conveying $\frac{1}{3}$ of the saw-mill to Daniel Sidelinger. And in like manner Davis joins with Bulfinch in deed of January 19, 1837, in conveyance of one-half of one-third of the saw-mill to Samuel Hagar, jr.

Nov. 7, 1849, Vinal Ware, without apparent title, joins with John Hagar in conveying one-sixth of the saw-mill to Benj. Mathews, and on the 8th of April, 1850, Vinal Ware and John Hagar, without any apparent title in either, convey one-sixth of the saw-mill to Elijah Sidelinger, and on the 13th of

the same April, Elijah Sidelinger conveys one-sixth of the saw-mill to William Mathews. It is at this point of time and in this way that the plaintiffs first appear as co-tenants.

On the 16th of May, 1850, Suel Hagar conveys one-sixth of the saw-mill to Benj. Mathews. Suel Hagar received a conveyance of one-sixth of the saw-mill from Bulfinch, August 23, 1823, and conveyed one-sixth to Samuel Hagar, jr., Feb. 24, 1830. The deeds in the case do not disclose from whence Suel Hagar obtained any interest in the mill, except by the deed from Bulfinch above referred to. July 13, 1850, Elijah Sidelinger and Thomas Hagar conveyed to William Mathews one-sixth of the saw-mill, neither of whom appears by the deeds in the case to have had any title at the time of that conveyance. Thus the deeds show title in Daniel Sidelinger to one-third of the saw-mill, derived from Bulfinch; and also of one-sixth, derived from the same source, in Benj. Mathews. The same papers show that the title to one-sixth of the mill is still in Bulfinch, and to one-third in Samuel Hagar, jr.

Bulfinch was also sole owner on the north side of the river. February 24, 1830, he conveyed an undivided half of a certain lot on that side of the stream to Samuel Hagar, jr. The lot thus conveyed includes the lot on which the stave-mill stands. Since that time there is no evidence in the case showing a conveyance of the stave-mill lot by either Bulfinch or Samuel Hagar, jr., but the title apparently remains in them.

There is a deed in the case from Samuel Davis to John Hagar, dated May 2, 1844, purporting to convey the stave-mill lot by metes and bounds. There are also two deeds from John Hagar, dated April 8, 1850, conveying one-third of his stave-mill lot to Henry Law and one-third to Andrew S. Sidelinger. But there is nothing in the case showing that Davis was in any way connected with title to this lot, which he conveys to Hagar as derived from Bulfinch or Bussey, or that he had any title whatever thereto.

The evidence shows that John Hagar, one of the defendants, and Elijah Sidelinger employed a mill-wright to work

upon the stave-mill, when it was erected in 1845.  But there is no evidence tending to show actual occupation of the stave-mill by either of the defendants since the plaintiffs became co-tenants in the saw-mill.  Nor can it be presumed, in the absence of all proof, that the defendants are in the occupation of the stave-mill under their title from Davis, when the plaintiffs show an elder, and apparently perfect outstanding title in Bulfinch and Samuel Hagar, jr.  The presumption rather would be that the possession follows the superior title of Hagar, jr., and Bulfinch.

It is obvious that this case has not been well prepared, and if we were permitted to speculate, we might come to the conclusion, that important links in the chain of title have been omitted which might have been supplied.  There is, however, no such discretion confided to us.  We must decide the case on the evidence produced, not upon what we may suppose exists.  Not finding any evidence that the defendants have in law or in fact encroached upon the rights of the plaintiffs, nonsuit must be entered according to the agreement of the parties, with costs for defendants.

TENNEY, C. J., and APPLETON, CUTTING and MAY, J. J., concurred.